In re the Marriage of Cynthia Lynn
HAYES (now Carrizales),
petitioner, Appellant,

v.

Jeffrey S. HAYES, Respondent.

No. CO–91–236.

Court of Appeals of Minnesota.

Aug. 6, 1991.

Tom Foley, Ramsey County Atty., Brad A. Johnson, Asst. Ramsey County Atty., St. Paul, for appellant.

John P. Guzik, St. Paul, for respondent.

Considered and decided by CRIPPEN, P.J., and NORTON and DAVIES, JJ.

## OPINION

CRIPPEN, Judge.

Appellant Cynthia Carrizales challenges the trial court's award of child support in a post-decree modification proceeding. She contends the trial court erred in deducting respondent Jeffrey Hayes's support obligation for a later-born child from his net income in determining the modified support award. We reverse and remand.

## FACTS

The parties have two children, one born in 1980 and the other in 1984. A 1984 dissolution decree placed custody of the children with appellant and awarded her $162.61 per month in child support. With cost-of-living adjustments through 1990, respondent's monthly child support obligation totaled $193.21.

In September 1990, appellant moved to modify support. The parties agreed child support should be increased because there had been a substantial change in circumstances since the decree. The trial court found respondent had monthly net income of $1,059.46. The court reduced this figure by $190.58 for another child support obligation determined just days earlier in a parentage proceeding. The court then applied the child support guidelines to determine a modified support award of $234.60 per month.

The $190.58 parentage obligation resulted from an adjudication for a child born in June 1990. The court conducted a single hearing to consider respondent's child support obligations in the parentage and post-decree modification proceedings. The parentage obligation was calculated as 22 percent of respondent's income, less his prior support obligation of $193.21 per month.

The trial court made additional findings that appellant's monthly expenses exceeded her income by $260.48 and that $548.50 of her expenses were attributable to the children's needs. This court found that respondent's monthly income ($1,059.46) was $500 more than his living expenses and that he also received more than $200 per month in rental income.

## ISSUE

Did the trial court err in its use of an obligation to a later-born child in calculating modified support for the older children?

## ANALYSIS

■ This appeal is the most recent among a number of cases where the determination of a child support obligation, usually in a modification proceeding, is complicated by the obligor's responsibilities arising from a new family relationship or parentage proceeding.

■ The trial court has broad discretion to determine child support, and its decision will be upheld unless it is clearly erroneous. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984). We conclude the trial court abused its discretion by deferring excessively to respondent's subsequent child.

■ Children by a subsequent marriage, although relevant to a trial court's decision, are not to be factored into the child support guideline tables. *Erickson v. Erickson*, 385 N.W.2d 301, 304 (Minn.1986). Consistent with *Erickson*, we have held that the trial court can consider the obligor's current family obligations in determining the obligor's available resources. *See Scearcy v. Mercado*, 410 N.W.2d 43, 46 (Minn.App. 1987); *Ramsey County v. Faulhaber*, 399 N.W.2d 617, 619 (Minn.App.1987).

Prior decisions have recognized, however, a general limitation on excessive deference to the later obligation. *See D'Heilly v. Gunderson*, 428 N.W.2d 133, 135–36 (Minn.App.1988) (trial court erred in allocating 58% of total child support expenditure to youngest child in obligor's care); *Mancuso v. Mancuso*, 417 N.W.2d 668, 673 (Minn.App.1988) (trial court erred in failing to consider needs of obligor's children from a previous marriage when setting support for a subsequent child).

■ Here, the trial court gave deference to respondent's second obligation by employing a "reduced ability" approach, a method permitted by statute, but only to factor in an earlier obligation. *See* Minn.

Stat. § 518.551, subd. 5(a) (1990) (net income for guidelines purposes excludes a child support or maintenance order that is being paid). We conclude the statute favors the earliest support obligation, not a later obligation that precedes modification of the first established duty. Here the trial court employed the reduced ability method to the disadvantage of the first obligation.

Thus, the trial court deducted the award in the parentage proceeding ($190.58) from respondent's net income ($1,059.46) leaving income of $868.88 and a support obligation of $234.60 per month for the two older children. As a result of this approach, the third child receives $190.58 per month, whereas each of the two older children receives $117.30 per month.

In *D'Heilly*, the trial court acted similarly. It assumed needs of the later-born child in the amount of $225 and then calculated a support award of $166.50 for two older children. *D'Heilly*, 428 N.W.2d at 135. This case, however, involves an issue not presented in *D'Heilly*. There, the subsequent child was given an assumed benefit greater than the total award for the two older children. Here, the trial court's determinations call for an award for the two older children of $234.60, in total somewhat greater than the $190.58 benefit for the third child. We conclude, however, that here too the deference to the later obligation is excessive.

It is inappropriate to assume for every case that each older child must be favored over a later-born child. Some per capita economy may be experienced in meeting the needs of a number of older children if they live in the same household. Thus, for example, an obligor earning $1,000 per month would have an obligation under the guidelines chart to pay $380 per month

(38% of $1,000) for four children. *See* Minn.Stat. § 518.551, subd. 5. Even under a strict guidelines approach, a subsequent child would be entitled to support of $105.40 (.17 × ($1,000 − $380)), somewhat more than the per capita benefit ($95.00) of the original award. *Id.* Normally, however, and especially for a prior obligation involving only one or two children, deference to the prior obligation will produce a guideline calculation giving the older children at least as much as the later-born child.

Absent unusual circumstances, such as a prior support obligation for a large family or unique needs of a subsequent child, it continues to be appropriate, as decided in *D'Heilly*, that the presumed benefit for the later child should not exceed the per capita award under the prior obligation. This limit on the trial court's discretion is consistent with the long-standing recognition that a child support obligor must favor an established obligation over a subsequently assumed obligation. *See Quist v. Quist*, 207 Minn. 257, 259–60, 290 N.W. 561, 562 (1940) (obligor cannot avoid a support obligation by voluntarily incurring new liabilities, including obligations to a second family).

Having determined that there was error in the ultimate decisions made here, the proceedings must be remanded for redetermination of respondent's child support obligation in this case. The trial court should calculate child support with respect for respondent's first obligation as indicated in our holdings here and in *D'Heilly*.[1]

Our correction of the trial court's determinations involves two additional questions requiring brief attention.

First, we recognize that our review here is limited to respondent's prior obligation in

---

1. Several approaches to recalculation of respondent's total child support obligation may be employed at the discretion of the trial court. The court could consider the total sum of obligations it anticipated here ($425.18) and give each child an equal benefit from this obligation (approximately $142). Alternatively, following a strict reduced ability approach, the court could conclude the obligation for the two older children should be approximately $318 (30% of

$1,059) and the award for the third child approximately $141 ((1,059 − 318) × .19). This calculation results in a total obligation of $459, more than the trial court anticipated here, and this determination would be inappropriate without assessing respondent's ability to pay such a sum. If the trial court determines a total obligation of more than $425.18 is appropriate, it is also within the trial court's discretion to divide that obligation equally among the children.

the dissolution proceedings. In fact, because of the trial court's decision in the parentage action, respondent faces an obligation to pay $190.58 per month in support for the later-born child. Must we give greater deference to that order than given in *D'Heilly* to an obligor's assessment of the cost to provide for a subsequent child residing with that parent? We are convinced it would be inappropriate to make such a distinction. In this case, it remains for the parties and the trial court in the parentage proceeding to address and correctly determine whether the obligation to the later-born child should be lowered in light of respondent's first child support obligation.

■ Second, we anticipate the question of whether multiple support obligations may be grouped together in a guidelines calculation. In this instance, that calculation would result in an obligation of approximately $371 per month for three children (35% of $1,059). This method, however, is precluded by *Erickson*, 385 N.W.2d at 304, and the reduced ability approach incorporated in Minn.Stat. § 518.551, subd. 5(a).[2]

Finally, we observe that the trial court struggled to use the guidelines charts in dealing with the difficult problem of multiple child support obligations. We have attempted to review the trial court's decision without demanding that a guidelines chart approach be disregarded. The statutes permit a determination without following the charts. Minn.Stat. § 518.551, subd. 5(a), (b), (d) and (e). In *Erickson*, the supreme court invited consideration of circumstances without factoring them into a guidelines chart valuation. *Erickson*, 385 N.W.2d at 304. Clearly, in many of these situations, a simpler approach is to determine the amount the obligor can pay, and to apportion that obligation consistent with the law determined in *D'Heilly* and this opinion.

**2.** It is true, of course, that a determination of the obligor's total ability to pay may require abandonment of the guidelines in calculating an

DECISION

The trial court's order for child support is reversed and remanded for redetermination consistent with this opinion.

Reversed and remanded.

appropriate obligation, leading to a total award no greater than produced by this calculation.